UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JANIE FULMER, ) | |
|     Plaintiff, ) | |
| ) | |
|     vs. ) | 1:08-cv-0159-JMS-RLY |
| ) | |
| MICHAEL ASTRUE, COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
|     Defendant. ) | |

**ENTRY REVIEWING COMMISSIONER'S DECISION**

Plaintiff Janie Fulmer brings this action pursuant to 42 U.S.C. §405(g) seeking review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits. Pursuant to 28 U.S.C. §636(c) and Fed. R. Civ. P. 73, the parties have consented to the magistrate judge conducting all proceedings in this matter. Acting for the Commissioner, an Administrative Law Judge ("ALJ") determined that Ms. Fulmer suffered from severe impairments of obesity, depression, anemia, gastroesophageal reflux disease, mild osteoarthritis and diverticulitis. The ALJ denied her claim, however, because he found that Ms. Fulmer was capable of performing sedentary work. As explained in detail below, the Court, having examined the record before it and the briefs of the parties, affirms the Commissioner's decision to deny benefits.

*Procedural History*

Ms. Fulmer filed her application for Disability Insurance Benefits on January 19, 1999, alleging she became disabled on December 18, 1995. (R.108-11). She had previously submitted an application on October 16, 1996. (R. 22). That claim was denied by another ALJ on January

1

6, 1998, and was a binding final decision which cannot be reopened (R. 503, 507). Therefore, the period of disability at issue in this case is January 7, 1998 to December 31, 1998, Ms. Fulmer's date of last insured. (R. 22, 503, 507).

Ms. Fulmer's January 19, 1999 application was denied initially and upon reconsideration. (R. 63-65, 85-86).  She  filed a timely written request for a hearing before an Administrative Law Judge. (R. 80).  A hearing was held on September 9, 2005 before ALJ Alberto Velasquez, at which Ms. Fulmer was represented by counsel.[1] (R. 517-562).  A supplemental hearing was conducted on April 5, 2006.[2] (R. 497-516).  The ALJ entered his decision on December 22, 2006, concluding that Ms. Fulmer was not disabled. (R. 22-30).  She requested a review of the ALJ's decision by the Appeals Council, which was denied.  (R. 6-8).  She now seeks judicial review of the ALJ's determination that she is not disabled.

*Ms. Fulmer's Background and Relevant Medical History*

Ms. Fulmer was 47 years old at the time of her last insured status of December 31, 1998. She was 55 years of age at the time of her last hearing before the ALJ.  She has a high school education and has completed her Clinical Pastoral Education at Christian Theological Seminary. (R. 142).  She has past relevant work as a chaplain and a patient visitor representative. (R.135).

Ms. Fulmer does not dispute the following facts as they are set out in the Commissioner's Brief:

"Between February and November 1998, Plaintiff saw Philip J.A. Ryan, M.D., a [sic] the Center for Metabolic & Hormonal Disorders (Tr. 160-66). Of note, during the previous year, in

---

[1] Ms. Fulmer had different counsel at the hearings than her counsel on appeal.

[2] It is not clear to the Court why a supplemental hearing was conducted.

August 1997, Dr. Ryan's office advised Plaintiff that if there were any more alterations of prescriptions, she will not get prescriptions of any kind from them again (Tr. 167). In September1998, Dr. Ryan noted Plaintiff's recent transfusion for anemia (Tr. 165). In early October 1998, Dr. Ryan noted Plaintiff reported a history of depression years ago and currently had a lot of stress as well as having psychological issues that were never addressed (Tr. 163). Dr. Ryan diagnosed major depression and prescribed Prozac. Later that month, Dr. Ryan conducted a physical, noting Plaintiff had diabetes and was obese and had just started medication to help with weight loss (Tr. 161-62). He said Plaintiff had hyperlipidemia and elevated liver enzymes following the blood transfusions, and he wanted to rule out hypothyroidism (Tr. 162). In early November 1998, Dr. Ryan noted Prozac was helping Plaintiff a lot, with no side effects (Tr.160). Her mood and tolerance were better, and she had more energy; while still tired, she was mostly back to normal and was sleeping better.

On April 14, 1998, gastroenterologist David L. Bash, M.D., saw Plaintiff in follow-up for reflux esophagitis and gastritis (Tr. 297). He discussed treatment options with Plaintiff, including medications and surgery. Plaintiff wanted to try to lose weight and follow the medical anti-reflux regimen.

On July 23, 1998, Plaintiff was treated in the emergency room (ER) for severe epigastric pain radiating to the right shoulder, with nausea and vomiting (Tr. 214-16). Further work-up was done inpatient, which was mostly negative, including radiological study which showed no evidence of acute GI bleed, EGD which showed a peptic esophagitis that appeared chronic but nonbleeding, and lower GI studies which were normal (Tr. 217-25, 233-44, see also Tr. 169,317-31). After four days, Plaintiff was discharged (Tr. 222-23). Her physician, Dr. Bash,

assessed iron deficiency anemia, chronic esophagitis with suspected recent bleeding, and anxiety (Tr. 223). Plaintiff was transfused, and her hemoglobin rose (Tr. 222). Plaintiff was discharged on medications in satisfactory condition.

On follow-up August 7, 1998, Dr. Bash said Plaintiff had been doing fairly well since discharge (Tr. 234). She had very little pain, no nausea or vomiting, and, while still a little weak, felt some improvement in her energy. Dr. Bash advised Plaintiff to continue her medications and to use Tylenol and heat for rib tenderness he assessed as costochondritis pain.

In October 1998, two doctors evaluated Plaintiff for urinary urgency and urge incontinence (Tr. 311-13). They referred Plaintiff to physical therapy for pelvic floor rehabilitation (Tr. 312). In November 1998, an exercise echocardiogram was negative but showed deconditioning (Tr. 349).

In April 1999, Plaintiff underwent a consultative physical examination with Angel D.Ablog, M.D., in connection with her claim for benefits (Tr. 279-81). Dr. Ablog reviewed Plaintiff's history and medications and examined her. He noted Plaintiff weighed 225.5 pounds at a height of sixty-two and on-quarter inches, but examination otherwise was essentially normal(Tr. 280). His impression was hiatal hernia with reflux esophagitis, obesity, esophageal ulcer, rectal bleeding, history of blood transfusion, sleep apnea, depression, anemia, and hearing loss (Tr. 280).

Also in April 1999, Plaintiff underwent a consultative psychological evaluation with Alfred R. Barrow, Ph.D., in connection with her claim for benefits (Tr. 261-69). Dr. Barrow interviewed Plaintiff, conducted a mental status examination, and administered memory testing (Tr. 261). On examination, Plaintiff's thought processes were generally logical, sequential, and

coherent; her mood calm, if not slightly depressed; and her affect normal, if not slightly flat (Tr.263). Dr. Barrow said Plaintiff wore glasses when driving but had no apparent speech or hearing defects. Ambulation was adequate, if not somewhat stiff. Plaintiff maintained adequate eye contact and seemed to put forth her best effort responding to questions and completing assessment tasks. Plaintiff reported that she cared for her personal needs and, during the day, she read, watched television, napped, did laundry, picked up, and payed bills with a checking account. She also worked out at a club, socialized with her husband and children, and occasionally went to church. Dr. Barrow said Plaintiff had a somewhat deficient general memory and concentration, along with her subjective report of considerable depression suggested significant depressive symptomatology indicative of major depressive disorder, recurrent, mild (Tr. 266). He also diagnosed dysthymic disorder, late onset. He noted she had some possible residual effects of previous traumas, but did not appear to meet the full criteria for a post-traumatic stress disorder (Tr. 267).

In June 1999, a state agency physician reviewed the record and concluded there was evidence Plaintiff had a severe mental impairment (Tr. 250-59). The doctor assessed Plaintiff's ability to perform work-related mental activities and concluded she retained the mental ability to complete simple chores and tasks (Tr. 247-49).

On November 24, 1999, another state agency physician, F. Gonzales, M.D., reviewed the record and agreed with the prior state agency physician's decision (Tr. 152)."

### *Hearing Testimony*

At the September 9, 2005 hearing, Ms. Fulmer testified that because of her sleep apnea and depression, she was "tired all the time or depressed all the time." (R. 526). She stated her

husband does the laundry, grocery shopping, cleans the house and pays the bills. (R. 527). She testified she does not feel like socializing but sometimes goes to church. (R. 527).

Dr. Gail Pitcher, a clinical psychologist, also testified at the hearing. She was asked whether Ms. Fulmer met or equaled a Listing during the period between 1995 and 1999, and stated no Listing was met or equaled for either anxiety or depression. (R. 557-560). She further testified that Ms. Fulmer would be less able in visual memory tasks than auditory memory tasks based upon her Wechsler Memory Scale of 72. (R. 560).

At the supplemental hearing on April 5, 2006, Holly Wyss, a licensed nurse practitioner who had met with Ms. Fulmer several times and reviewed her case, testified on her behalf. (R. 501-02). Ms. Fulmer again testified, stating that she could not even work at a job that only required her to stay focused for two hours at a time because of her attention span and depression. (R. 509).

Vocational expert Gail Corn testified at the supplemental hearing as well. She was asked by the ALJ whether an individual aged 47 with a twelfth grade education could perform sedentary work with the following restrictions: lift and carry ten pounds occasionally and five pounds frequently; stand and walk for two of eight hours, broken in small segments; sit for about six of eight hours with an option to alternate into a sitting or standing position for one to two minutes each hour; and only simple and repetitive tasks with no more than superficial interaction with the general public, co-workers or supervisors (R. 510). Ms. Corn testified that work was available for such an individual, such as 1,000 general office clerk jobs; 2,500 assembler jobs; 400 hand packer jobs; and 700 machine operator jobs, all at the sedentary level in the local region (R. 511). The vocational expert stated there was no conflict between her testimony and

the information provided in the Dictionary of Occupational Titles (DOT). (R. 511).

*Disability Standards and Judicial Review*

To qualify for disability benefits, a claimant must be disabled as that term is defined by the Social Security Act, that is, unable to engage in substantial gainful activity due to a medically determinable impairment that can be expected to either cause death or continue for at least twelve continuous months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3).  To determine whether a claimant is disabled, the ALJ must apply the following five-step inquiry:

(1) Has the claimant engaged in substantial gainful activity?  If so, she was not disabled.

(2) If not, did the claimant have an impairment or combination of impairments that are severe?  If not, she was not disabled.

(3) If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, she was disabled.

(4) If not, is the claimant's residual functional capacity such that she could perform his past relevant work?  If so, she was not disabled.

(5) If not, could the claimant perform other work given his residual functional capacity, age, education, and experience?  If so, then she was not disabled.  If not, she was disabled.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see generally* 20 C.F.R. §§ 404.1520, 416.920. When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The standard for judicial review of the ALJ's decision is deferential. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007) (citing *Dixon*, 270 F.3d 1171 at 1176). The ALJ's findings of fact are conclusive and must be upheld "so long as substantial evidence supports them and no error of law occurred." *Dixon*, 270 F.3d at 1176. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Id.*, and the court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). If "'in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits.'" *Schmidt*, 496 F.3d at 841 (quoting *Books v. Chater*, 91 F.3d 972, 978 (7th Cir.1996)). However, the ALJ must articulate her analysis of the evidence in her decision. While she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into [her] reasoning . . . [and] build an accurate and logical bridge from the evidence to [her] conclusion." *Dixon*, 270 F.3d at 1176.

## *ALJ's Findings*

The ALJ determined at step one that Ms. Fulmer had not engaged in substantial work activity at any time relevant to his decision. At step two, the ALJ determined that Ms. Fulmer suffered from severe impairments of obesity, depression, anemia, gastroesophageal reflux disease, mild osteoarthritis and diverticulitis. At step three, the ALJ found that Ms. Fulmer did not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 ("the Listings"). At step four, the ALJ determined that Ms. Fulmer had the residual functional capacity ("RFC") to perform sedentary level work with the following restrictions: lift and carry ten pounds occasionally and

five pounds frequently; stand and walk for two of eight hours and sit for about six of eight hours with an option to alternate to a sitting or standing position for one or two minutes each hour; no limitations on pushing and pulling, no manipulative limitations, no visual limitations, no communicative limitations and no environmental limitations; only simple and repetitive tasks and no more than superficial interaction with the general public, co-workers or supervisors. The ALJ further found that Ms. Fulmer was not capable of performing her past relevant work, but at step five, he determined that there were jobs that existed in significant numbers in the national economy that she could perform. Therefore, the ALJ concluded Ms. Fulmer was not disabled.

*Discussion*

Ms. Fulmer claims the ALJ committed error in four respects that require remand: (1) the ALJ ignored the evidence and testimony from the September 9, 2005 hearing; (2) the ALJ improperly dismissed the opinion of Ms. Fulmer's nurse practitioner contrary to SSR 06-03p; (3) the ALJ failed to fully develop the record according to SSR 96-8p, and to obtain an updated medical opinion according to SSR 96-6p; and (4) the ALJ failed to properly analyze and take into consideration Ms. Fulmer's diagnosis of chronic headaches.

**I.  The ALJ did not ignore the evidence and testimony from the September 9, 2005 hearing**

Ms. Fulmer asserts that the ALJ did not refer to her testimony or that of Dr. Pitcher at the September 9, 2005 hearing in his decision, nor did he even refer to the fact that the September 9, 2005 hearing was conducted. Consequently, she argues, the ALJ failed to sufficiently articulate his assessment of the evidence to assure the Court that he considered the "important evidence" and to enable the Court to trace the path of his reasoning. (Brief pg. 8).

With respect to Ms. Fulmer's testimony at the September 9, 2005 hearing, the ALJ did

9

indeed consider and recite some of her testimony in his decision. In fact, the testimony he attributed to Ms. Fulmer in his decision came solely from the September 2005 hearing. (Compare R. 24, with R. 524 - 27, 532, 534-35).

As for Dr. Pitcher, Ms. Fulmer does not specify the "important evidence" or testimony that the ALJ failed to consider. Indeed, the important testimony Dr. Pitcher offered is detrimental to Ms. Fulmer's case, as Dr. Pitcher testified that Ms. Fulmer's depression did not meet or equal a Listing. The ALJ came to the same conclusion, a conclusion not disputed or claimed to be error by Ms. Fulmer. Although the ALJ clearly did not discuss or refer to Dr. Pitcher's testimony or opinion in any way in his decision, neither that failure, nor anything in her testimony, leads the Court to conclude that the ALJ did not consider the important evidence nor leave the Court unable to trace the path of his reasoning.

## II.  The ALJ did not improperly dismiss the opinion of the nurse practitioner

Ms. Fulmer next argues that the ALJ failed to consider the testimony of Holly Wyss, her nurse practitioner, contrary to SSR 06-03p. She notes that the ALJ did not mention her testimony, or even her presence at both hearings, in his decision. She also complains about the manner in which the ALJ questioned Ms. Wyss at the hearing, claiming the ALJ interrupted her, changed the topic, and never returned to the line of questioning.

The Commissioner responds that Ms. Wyss' testimony was only relevant to Ms. Fulmer's then-current condition, and not her condition during the relevant time period. As the ALJ informed Ms. Wyss, the relevant time period for this claim was between January 7, 1998 and December 31, 1998.

Pursuant to 20 C.F.R. § 404.1527(b) and 20 C.F.R. § 404.1513(d), an ALJ must consider

all medical opinions, regardless of source. Evidence that is not from an "acceptable medical source" may be used to show the severity of an individual's impairment(s) and how it affects the individual's ability to function. *Cooper v. Barnhart*, 2007 U.S. Dist. LEXIS 74527 at *11 (S.D. Ind. 2007). These "other sources" specifically include nurse practitioners. 20 C.F.R. § 404.1513(d). In weighing evidence from "other sources" the ALJ is to use specific factors, including the following: length and frequency of the contact between the source and the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support the opinion; how well the source explains the opinion; whether the source has a relevant area of expertise; and other factors tending to support or refute the opinion. SSR 06-03p.

Ms. Wyss' testimony was clearly focused on the current status of Ms. Fulmer's health. The ALJ did interrupt her testimony, and a discussion ensued between the ALJ and Ms. Fulmer's counsel, which concluded with the ALJ clarifying, "[t]he only thing I can look at is the evidence from January 7, 1998 until your date of last insured. Now, I can look at evidence after that and see if that evidence is consistent with the condition that existed earlier. So I can look again a little beyond that." (R. 507). The ALJ further stated that Ms. Wyss' testimony regarding Ms. Fulmer's condition in 2006 may demonstrate that Ms. Fulmer is disabled now, but "that doesn't help me to get back to 1998." (R. 507). Ms. Fulmer's counsel then stated that "our purpose in being here is to simply demonstrate that the things that she was bringing up back then have lasted more than 12 months." (R. 508).

The ALJ made clear why Ms. Wyss' testimony was not relevant to his decision. Furthermore, the medical records that Ms. Wyss had reviewed and about which she testified

11

were provided to the ALJ for his review.  Moreover, Ms. Fulmer was represented by counsel.  After the above discussion and exchange between the ALJ and Ms. Fulmer's counsel, had there been additional, relevant testimony that Ms. Wyss could have provided, Ms. Fulmer's counsel had every opportunity to present it.  As the ALJ stated to Ms. Fulmer, "[i]t's your hearing." (R. 512).

Most important, the ALJ specifically noted in his decision some of the medical evidence from 2005 and 2006, but concluded that "this evidence does not reflect on her disability before her date last insured." (R. 27).  And, as counsel clarified, the evidence was being introduced to establish that the symptoms would extend beyond 12 months, thereby constituting a medically determinable impairment meeting the duration requirement.  The ALJ found as much in determining Ms. Fulmer had suffered from severe impairments of obesity, depression, anemia, gastroesophageal reflux disease, mild osteoarthritis and diverticulitis.  Therefore, the Court concludes that the ALJ properly considered the relevant evidence and properly considered the relevance of Ms. Wyss' testimony, and there was no error in the ALJ's limitation on Ms. Wyss' testimony.

**III.  The ALJ fully developed the record and did not need to obtain an updated medical opinion according to SSR 96-6p**

Ms. Fulmer claims the ALJ should have obtained medical records from her family physician that she was unable to obtain herself.  Specifically, Ms.Fulmer testified at both hearings that she had attempted to obtain medical records that specifically pertain to the relevant time period and her treatment for depression from her family physician, Dr. Phillip Ryan.  However, he had apparently "disappeared" and attempts she had made to obtain her records

proved futile. (R. 515, 528). Ms. Fulmer asserts that the "ALJ may have had better luck at retrieving these records, however there is no indication that he made any effort." (Brief pg. 11).

However, ultimately Ms. Fulmer was able to locate Dr. Ryan, and obtained some records, although she did not believe what she was given was her complete file. (R. 437-38). She submitted the records she did obtain for consideration. In addition, the state agency obtained records from Dr. Ryan that covered the relevant time period. (R. 154-228). These records contain information regarding Ms. Fulmer's treatment for depression and the medication she was prescribed. (R. 163).

Ms. Fulmer cites SSR 96-8p's requirement that the ALJ consider all of her allegations and make every reasonable effort to ensure that the file contains sufficient evidence to assess her RFC. She claims the ALJ failed to do so. However, she cites no specific evidence she believes may have been missing from the records of Dr. Ryan that would provide further support for her claim. It is Ms. Fulmer's burden to prove that she is disabled. 20 C.F.R. §404.1512(a). It is she who "must bring to [the Commissioner's] attention everything that shows that" she is disabled, meaning she "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [her] medical impairments." Id.

While the ALJ does have "a basic obligation to develop a full and fair record," *Nelson v. Apfel,* 131 F.3d 1228, 1235 (7th Cir. 1997), "the Seventh Circuit has noted that it is impossible for an ALJ to create a "complete" record because it is always possible to "obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on."" *Tomlinson v. Astrue,* 2009 U.S. Dist. LEXIS 4092 at *21 (S.D. Ind. Jan. 21, 2009), quoting *Kendrick v. Shalala,* 998 F.2d 455, 456-57 (7th Cir. 1993).

"Accordingly, federal courts generally respect the Commissioner's reasoned judgment in determining how much evidence to collect." *Id.* at *22.

Furthermore, Ms. Fulmer was represented by counsel. Both hearings were left open for a short period of time in order for her to submit additional records. (R. 515, 520). The issue with obtaining records from Dr. Ryan was discussed at both hearings, and Ms. Fulmer never asked the ALJ for assistance. Ms. Fulmer asserts the ALJ may have had better luck obtaining the records than she, but provides no basis for that assertion.

In his decision, the ALJ noted her history of depression, citing to records from Dr. Ryan. (R. 25). He later specifically noted that Ms. Fulmer "has a history of depression and during the relevant time was on Prozac." (R. 27). He discussed the psychological evaluation she underwent for purposes of her claim. (R. 25, 27). The Court concludes the ALJ satisfied his obligation to develop the record with respect to Ms. Fulmer's depression.

Ms. Fulmer also argues that because she submitted additional medical records at the supplemental hearing, the ALJ should have obtained an updated medical opinion on equivalence to the Listings from a medical expert, taking into consideration the additional medical records. She cites the requirements of SSR 96-6p in support of her argument.

SSR 96-6p states that the requirement to receive expert opinion evidence on equivalence to a Listing into the record is satisfied by the presence of a Disability Determination and Transmittal Form and/or a Psychiatric Review Technique Form in the record, completed and signed by a State agency medical or psychological consultant. These forms are present in the record. (R. 63-65, 251-259). However, SSR 96-6p provides that when additional medical evidence is received "that in the opinion of the administrative law judge or the Appeals Council

14

may change the State agency medical or psychological consultant's finding that the impairments(s) is not equivalent in severity to any impairment in the Listing of Impairments," then an updated medical judgment as to medical equivalence is required.

The additional medical records submitted span the time period of 2004 to 2006.  The ALJ made his opinion clear both at the hearing, as discussed above, and in his decision: the more recent medical evidence "does not reflect on her disability before her date last insured." (R. 27).  Clearly then, he was not of the opinion that the additional medical records might have changed the State agency findings that Ms. Fulmer's impairments were not equivalent in severity to a Listing, and he was not required to obtain an updated medical opinion as to equivalence.

**IV.  The ALJ properly considered Ms. Fulmer's diagnosis of chronic headaches**

Lastly, Ms. Fulmer claims that although the ALJ noted that she has a history of chronic headaches, he failed to otherwise analyze the implications chronic headaches have on a person's ability to work.   She argues the ALJ did not assess the frequency, severity, intensity or debilitating nature of the headaches.

However, as the Commissioner points out, she does not explain what additional limitations she might have as a result of headaches.  She simply speculates that "[o]ne or two very bad headaches per week, if debilitating enough, can disrupt employment attendance and performance to make work not viable." (Brief pg. 13).

Again, it is Ms. Fulmer's burden to prove that she is disabled.  Her counsel questioned her extensively at the first hearing regarding all of her impairments, and she did not mention headaches.  Nor did she testify about her headaches at the second hearing.  Further, on the Disability Report she completed as part of her application, she did not list headaches as one of

the illnesses, injuries or conditions that limit her ability to work, or anywhere else on the report. (R. 133-145). She points to no evidence in the medical records that would support her claim that her chronic headaches impact her ability to work. As it is her burden to provide such proof, there is no error on the part of the ALJ.

*Conclusion*

For the above reasons, the Commissioner's decision must be affirmed. The Court will enter final judgment accordingly.

**SO ORDERED.**

02/20/2009

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov